UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES R. GORE, an individual, | Case No. 2:25-cv-02518-RSL |
| Plaintiff, | TEMPORARY |
| v. | RESTRAINING ORDER |
| U.S. BANK TRUST, N.A., a foreign corporation, not in its individual capacity but solely as owner trustee for RCAF Acquisition Trust; MTC FINANCIAL INC., a Washington corporation; SELENE FINANCE LP, a foreign limited partnership, | |
| Defendants. | |

This matter comes before the Court on plaintiff's motion for temporary restraining order (Dkt. # 15), the response from defendants Selene Finance and U.S. Bank Trust National Association (Dkt. #18), and the declaration of Aaron A. Wagner (Dkt. # 19).[1] Having considered the motions, the declaration, and the record herein, the Court GRANTS petitioner's motion for temporary restraining order.

---

[1] Defendant MTC Financial Inc. did not file a response to plaintiff's motion for temporary restraining order. "[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LCR 7(b)(2).

TEMPORARY RESTRAINING ORDER - 1

## I.     Background

In June 2008, plaintiff took title to a property located in Seattle, Washington (referred to hereinafter as "the property"). Dkt. # 15 at 1–2. Around the same time, plaintiff took out a $278,100 mortgage on the property. *Id*. Plaintiff describes the property as his home. *Id*. at 8. In the nearly eighteen years since plaintiff took title to the property, plaintiff's mortgage has passed through the hands of multiple lenders, trustees, and servicers. *Id*. at 2–6. Plaintiff's mortgage is currently held by defendant U.S. Bank Trust National Association and is currently serviced by defendant Selene Finance. Dkt. # 15-2 at ¶¶ 12, 22. The current trustee for the mortgage is defendant MTC Financial, Inc. *Id*. at ¶ 23.

Plaintiff states that beginning in 2020, he "underwent several necessary medical surgeries for cysts in my chin and neck, which prohibited me from working. Concurrently, the COVID-19 pandemic resulted in my workplace being shut down." *Id*. at ¶ 4. Plaintiff states that his mortgage servicer at the time placed a 180-day forbearance on his mortgage beginning in June 2020. *Id*. at ¶ 5. Ultimately, that forbearance lasted eighteen months, until December 2021. *Id*. "However," defendant states, "when the duty to continue making payments on the mortgage resumed, I was not provided with notice. Consequently, I defaulted on payments." *Id*. Plaintiff later sought modification of his mortgage in order to "get back on my payment schedule." *Id*. at ¶ 8. Plaintiff contends his modification effort was complicated by his mortgage being transferred among several mortgage servicers and lenders between 2022 and 2023. *Id*. at ¶¶ 8–13.

After plaintiff's mortgage arrived at its present servicer, defendant Selene Finance, plaintiff contends that he "tried yet again to make a loan modification request." *Id*. at ¶ 13. His

TEMPORARY RESTRAINING ORDER - 2

request was denied. *Id*. *See also* Dkt. # 18 at 3:13–14. Plaintiff then submitted a Modification Appeal Form to Selene Finance that was denied. Dkt. # 15-2 at ¶ 14. Plaintiff then sent Selene Finance multiple letters; filed complaints against Selene Finance with the Washington State Attorney General's Office and the Consumer Financial Protection Bureau; and submitted additional loan modification applications to Selene Finance that were denied. *Id*. at ¶¶ 15–26.

In November 2024, plaintiff became aware that the property was scheduled for a trustee's sale on March 8, 2024. *Id*. at ¶¶ 22, 25. Since that time, "[t]he trustee's sale has been continued several times and is currently set for February 6, 2026." *Id*. at ¶ 30. "Meanwhile," plaintiff states, "the mortgage has continued to accrue compound interest, inflating the reinstatement cost from about $20,000.00 at the start of his loan application process to over $180,000.00 now." Dkt. # 15 at 4:21–5:1.

Plaintiff filed suit in King County Superior Court on Jan. 13, 2025, seeking, among other things, an order enjoining a trustee's sale of the property that was then scheduled for Jan. 17, 2025. Dkt. 1-1 at 4–12. Plaintiff filed an amended complaint in King County Superior Court on Nov. 24, 2025. Dkt. # 1-2 at 4. That complaint, which names the present defendants and includes a cause of action under the Real Estate Settlement Procedures Act, 12 C.F.R. § 1024, was removed to this Court on Dec. 10, 2025. Dkt. # 1.

## II.      Discussion

A temporary restraining order ("TRO") is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A motion for TRO may be granted only if the moving

TEMPORARY RESTRAINING ORDER - 3

party establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "All four elements must be satisfied." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). The factors are evaluated on a "sliding scale," however, meaning that "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit has repeatedly held that "when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *hiQ Labs*, 31 F.4th 1180 at 1188 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011)).

### A. Likelihood of Success on the Merits

Plaintiff alleges in his complaint that defendants have violated several provisions of Washington State law as well as the Real Estate Settlement Procedures Act (RESPA), 12 C.F.R. § 1024. Dkt. # 1-2 at 4. Explaining the alleged RESPA violation, plaintiff contends that defendant Selene Finance "and one or more of the other Defendants have engaged in acts which constitute a breach of [RESPA], including but not necessarily limited to by failing or refusing to properly investigate and act upon Plaintiff's notices of error or mishandling by prior servicers." *Id*. at 14. In plaintiff's motion for TRO, he alleges defendant Selene Finance "ignored [plaintiff's] request to look into the account's history—a clear violation of their investigative duties under RESPA." Dkt. #15 at 8:17–20.

TEMPORARY RESTRAINING ORDER - 4

Under RESPA, where a servicer has received notice of a covered error, that servicer must generally respond to the notice of error by either correcting the error and providing written notice to the borrower, or by:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(b), (e). Plaintiff alleges that defendants ignored two letters providing notice of covered errors in this matter. Dkt. # 15 at 5:21–6:6. In a letter to defendant Selene Finance dated November 5, 2024, then-counsel for plaintiff alleged the existence of "improper charges applied to [plaintiff's] account" and stated that plaintiff "believes that Selene failed to provide him notice that a Covid-19 related forbearance was ending, and then added excessive fees and costs to his account which violates Washington's Consumer Protection Act." Dkt. #15-2 at 88. The covered errors listed under 12 C.F.R. § 1024.35(b) include "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." In a letter to defendant Selene Finance dated Dec. 31, 2024, plaintiff disputed Selene's mortgage modification appeal process and alleged, among other things, that "Selene Finance has been negligent in investigating my dispute letter dated: September 7, 2023 [sic] which I outlined the improper due diligence by previous servicers regarding required due diligence of my post-forbearance mortgage assistance required by the American Rescue Plan Act 2021." Dkt. # 15-2 at 93. In plaintiff's complaint and motion for TRO, he alleges that defendants' covered errors include

TEMPORARY RESTRAINING ORDER - 5

(but are not limited to) a covered error described under 12 C.F.R. § 1024.35(b) as "[f]ailure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer." Dkts. # 1-2 at 14, # 15 at 8:14.

This Court notes defendants' argument that "Plaintiff's real issues are with prior servicers" given that Selene Finance is "the ultimate 'transferee servicer' in this matter" and "did not begin servicing plaintiff's loan until late 2022." Dkt. # 18 at 3:21–24, 5:16–24. "Why Plaintiff has not sought to join the Prior Servicers in this matter is unknown to Selene and Trustee—perhaps there is a perceived statute of limitations issue." *Id*. at 4:1–3. The Court also notes defendant Selene Finance's letter of July 25, 2025, to the Consumer Financial Protection Bureau stating that "Selene is unable to comment on issues related to another servicer" and suggesting that plaintiff "contact the previous servicers to discuss the specific issues related to their servicing of the account." Dkt. # 1-2 at 121–2. Finally, the Court notes that plaintiff, in his letters to Selene Finance dated November 5, 2024, and Dec. 31, 2024, did not explicitly state that he was intending to give defendant Selene Finance notice of covered errors under 12 C.F.R. § 1024.35. Dkt. #15-2 at 88, 93.

However, defendants do not argue in their response to plaintiff's motion for TRO that they lacked proper notice of alleged covered errors under 12 C.F.R. § 1024.35. *See Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1048 (N.D. Cal. 2023) ("[A]lthough the letter does not cite a specific provision within section 1024.35(b) in identifying the purported error, the information that [plaintiff] allegedly sent plausibly describes that error . . . ."). Instead, defendants here merely assert in their response that Selene "committed no errors." Dkt. # 18 at

TEMPORARY RESTRAINING ORDER - 6

4:3. That is not a sufficient response to a notice of covered errors under § 1024.35. Nor do defendants argue that any of the exceptions to the required responses to a notice of covered errors apply here. Dkt. # 18. *See also* 12 C.F.R. § 1024.35(e), (f), (g). In addition, defendants do not argue in their response that a "reasonable investigation" was conducted into the covered errors that are alleged in plaintiff's letters. 12 C.F.R. § 1024.35(e)(1)(B). Nor do they argue that, after a "reasonable investigation" into the covered errors that are alleged in plaintiff's letters, plaintiff was provided with "written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination," and other required information. *Id*. Thus, the Court finds that plaintiff has raised "serious questions going to the merits" of his claim that defendants violated § 1024.35 by "failing or refusing to properly investigate and act upon Plaintiff's notices of error." Dkt. # 1-2 at 14. *hiQ Labs*, 31 F.4th 1180 at 1188 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011)).[2]

### B. Irreparable Harm

Plaintiff argues that he will suffer irreparable harm absent a TRO, "namely, losing his home." Dkt. # 15 at 8:20–21. Indeed, "the loss of one's home can constitute irreparable harm." *Sato v. U.S. Bank Tr. NA*, No. CV1308469MMMMRWX, 2014 WL 12571041, at *2 (C.D. Cal. Jan. 21, 2014) (collecting cases). Defendants Selene Finance and U.S. Bank Trust National Association appear to argue that here, plaintiff's motion for TRO should be denied because he

---

[2] Because the Court has found serious questions going to the merits of plaintiff's federal claim, it need not analyze plaintiff's claims under Washington State law at this point.

TEMPORARY RESTRAINING ORDER - 7

has been aware of potential harm from a trustee's sale since January 2025. Dkt. # 18 at 2:17. The record before this Court does show that on October 8, 2025, a King County Superior Court judge denied plaintiff's motion for a TRO that, at the time, would have prevented a trustee's sale that had been scheduled for October 10, 2025. Dkt. # 1-3 at 385–87. In denying plaintiff's motion for a TRO, the Superior Court judge stated that "Plaintiff has been aware for a long time foreclosure was imminent." *Id*. However, the Court cannot agree with defendants' contention that "nothing has changed since now and then." Dkt. # 18 at 3:3. In Nov. 2025 plaintiff filed an amended complaint in King County Superior Court. Dkt. # 1-2 at 4. That complaint, which names the present defendants, was removed to this Court on Dec. 10, 2025. Dkt. # 1. On Jan. 7, 2026, notice was sent to plaintiff that a trustee's sale previously scheduled for Jan. 16, 2026, had been postponed until Feb. 6, 2026. Dkt. # 15-2 at 110. Given the relatively recent removal of this case to federal court and plaintiff's recent notification that a trustee's sale is now planned for Feb. 6, 2026, this Court has no trouble finding that plaintiff faces imminent and irreparable harm from the loss of his home on Feb. 6, 2026. *Id*.

### C. Balance of Equities

Defendants Selene Finance and U.S. Bank Trust National Association argue that granting plaintiff's motion for TRO will cause defendants "real harm because February 6, 2026, is the last day that the Trustee's Sale may be held without restarting the entire foreclosure process," Dkt. # 18 at 3:5, and "[i]t will cost Defendants thousands of dollars in fees and costs to restart the foreclosure process and months to complete, during which time interest, penalties, fees, and costs will continue to accrue on the loan," Dkt. # 19 at ¶ 5. Plaintiff argues that the balance of

TEMPORARY RESTRAINING ORDER - 8

equities tips in his favor because "beleaguered by years of surgeries and mounting debt, he has been locked in a seemingly endless battle against loan servicers perpetually trying to pass the buck for their erroneous handling of his loan modification requests, Selene being the most recent among them." Dkt. # 15 at 9:2. Although the Court is mindful of the monetary costs defendants may incur if the looming trustee's sale is restrained from taking place, the Court finds that the balance of equities tips sharply in plaintiff's favor given the potential loss of his home. *See Velazquez v. Chase Home Fin. LLC*, No. CIV. S-12-0433 LKK, 2012 WL 671965, at *2 (E.D. Cal. Feb. 29, 2012). *See also hiQ Labs*, 31 F.4th 1180 at 1188 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135 (9th Cir. 2011)).

### D.  Public Interest

It is in the public interest to require lenders and mortgage servicers to comply with federal statutes and regulations. *Velazquez*, No. CIV. S-12-0433 LKK, 2012 WL 671965, at *2 (E.D. Cal. Feb. 29, 2012). Therefore, the Court finds the public interest weighs in favor of granting plaintiff's motion for TRO.

### E.  Security

Pursuant to Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court retains discretion "as to the amount of security required, *if any.*" *Johnson v. Couturier,* 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in the original).

TEMPORARY RESTRAINING ORDER - 9

Here, defendants argue that plaintiff should be required to provide security equal to "at least the amount due to reinstate" plaintiff's loan, an amount defendants put at "more than $178,321.14." Dkt. # 18 at 4:7–14. Plaintiff argues that defendants "will not incur any significant damages as a result of an injunction" and that therefore the Court should require "only a nominal bond, if any." Dkt. # 15 at 11:3–9. Plaintiff's arguments in this regard are premised on RCW 61.24.230. *Id*. However, the Court here is considering its obligations under Fed. R. Civ. P. 65(c) in light of its findings above that (1) plaintiff has raised serious questions going to the merits of the claimed 12 C.F.R. § 1024.35 violation and (2) the balance of equities tips sharply in plaintiff's favor given the potential loss of his home.

Although it is a real possibility that additional interest, penalties, fees, and costs will accrue on the loan after the issuance of a TRO, the Court finds this scenario to be speculative given that the propriety of additional interest, penalties, fees, and costs is being contested in this matter. Less speculatively, defendants have stated that if the Court issues a TRO prohibiting the Feb. 6, 2026, trustee's sale from occurring then defendants will be required to restart "the entire foreclosure process," Dkt. # 18 at 3:5, and "[i]t will cost Defendants thousands of dollars in fees and costs . . . and months to complete, during which time interest, penalties, fees, and costs will continue to accrue on the loan," Dkt. # 19 at ¶ 5.  Defendants do not specify how many "thousands of dollars in fees and costs" are likely to be required to restart the foreclosure process. *Id*. Thus, in its discretion, and lacking any firm calculation as to the likely cost to defendants of restarting the foreclosure process other than "thousands of dollars," the Court will require plaintiff to post a $3,000 bond. *Johnson,* 572 F.3d 1067, 1086 (9th Cir. 2009).

TEMPORARY RESTRAINING ORDER - 10

### III.    Conclusion

For all the foregoing reasons, plaintiff's motion for temporary restraining order (Dkt. # 15) is GRANTED as follows:

(1) The Court ORDERS that defendants, as well as their agents, associates, and/or anyone having access to their financial accounts or acting in concert with them regarding any aspect of the allegations set forth in plaintiff's complaint, are immediately enjoined and restrained, directly or indirectly, until further order of this Court, from transferring, selling, expending, or conveying the property, including by way of the trustee's sale currently scheduled for February 6, 2026;

(2) Plaintiff is ORDERED to post bond in the amount of $3,000 within fourteen (14) days of the date of this Order; and

(3) This TRO is effective until fourteen (14) days from the date of its entry.

Plaintiff is directed to file a brief on any requested preliminary injunction by Monday, Feb. 2, 2026, at noon. Assuming a motion for preliminary injunction is filed, the Court will then set the remainder of the preliminary injunction briefing schedule and a hearing date. Alternatively, given that defendants have indicated the issuance of this TRO will make it impossible for them to set a new date for a trustee's sale until "months" from now (Dkts. # 18 at 3:5, # 19 at ¶ 5), the parties may offer a stipulation and proposed order that resolves the trustee's sale issue for an appropriate amount of time beyond the expiration of this TRO.

IT IS SO ORDERED.

TEMPORARY RESTRAINING ORDER - 11

DATED this 27th day of January, 2026.

Robert S. Lasnik
United States District Judge

TEMPORARY RESTRAINING ORDER - 12